**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **LONESTAR 24 HRER MANAGEMENT, LLC, & PATIENT J.H., ET AL.,** | § § § | |
| *Plaintiffs*, | § § | |
| v. | § § | **Civil Action No. 5:22-cv-01090-JKP-RBF** |
| **BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION** | § § § | **Hon. Jason Pulliam** |
| *Defendant*. | § § § | |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD
AMENDED COMPLAINT AND MEMORANDUM IN SUPPORT THEREOF**

**[ORAL ARGUMENT REQUESTED]**

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND ............................................................................................... 3

ARGUMENT AND AUTHORITIES ...................................................................... 5

   I.   THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF
       SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING .. 5

     A.  Legal Standard for Rule 12(b)(1) Dismissal for Lack of Standing.............................. 5

     B.  The Court Lacks Subject Matter Jurisdiction Over Unnamed Parties ......................... 6

     C.  The Court Cannot Have Subject Matter Jurisdiction Over Both Lonestar and the
        Patient Plaintiffs for the Same Claims at the Same Time ............................................ 8

     D.  Lonestar's Assignment Allegations are Insufficient to Confer Article III Standing .. 10

     E.  The Court Lacks Subject Matter Jurisdiction Over a Number of the Insurance Claims
        Listed On Exhibit 1 to the Complaint ....................................................................... 13

  II.  THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE
       PLAINTIFFS FAIL TO STATE A CLAIM .................................................................. 19

     A.  Legal Standard for Rule 12(b)(6) Dismissal for Failure to State a Claim ................. 19

     B.  Plaintiffs' Complaint Should Be Dismissed in its Entirety Because Every Cause of
        Action is Premised on Misstatements of Texas and Federal Law .............................. 19

     C.  Each of Plaintiffs' Causes of Action Also Suffer From Fatal Pleading Deficiencies
        that Independently Require Dismissal ....................................................................... 23

CONCLUSION ................................................................................................. 30

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co.*,
    662 F.3d 376 (5th Cir. 2011) ................................................28

*APFA Inc. v. UATP Mgmt., LLC*,
    537 F. Supp. 3d 897 (N.D. Tex. 2021) .................................10

*Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*,
    No. 2:18-CV-0166-D-BR, 2019 WL 2539272
    (N.D. Tex. Apr. 12, 2019).....................................................30

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................19

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*,
    129 F. Supp. 3d 440 (N.D. Tex. 2015) .................................27

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..........................................................3, 19

*Botsford v. Blue Cross & Blue Shield of Montana, Inc.*,
    314 F.3d 390 (9th Cir. 2002) ................................................18

*Brushy Creek Family Hosp., LLC v. Blue Cross & Blue Shield of Tex.*,
    No. 1:22-CV-00464-RP, 2022 WL 6727278 (W.D. Tex. Oct. 11, 2022),
    *report and recommendation adopted sub nom. Brushy Creek Family Hosp.,*
    *LLC v. Blue Cross & Blue Shield of Tex.*, No. 1:22-CV-464-RP,
    2022 WL 17732683 (W.D. Tex. Nov. 15, 2022).....................20, 21, 29

*Burkey v. Gov't Emps. Hosp. Ass'n*,
    983 F.2d 656 (5th Cir. 1993) ..........................................17, 18

*Cibolo Waste, Inc. v. City of San Antonio*,
    718 F.3d 469 (5th Cir. 2013) ..................................................9

*DaimlerChrysler Corp. v. Cuno*,
    547 U.S. 332 (2006)..............................................................10

*Doe v. Bush*,
    No. SA-04-CA-1186-FB, 2005 WL 2708754
    (W.D. Tex. Aug. 17, 2005) .....................................................7

*Doe v. Stegall*,
  653 F.2d 180 (5th Cir. 1981) .................................................................6, 7

*Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*,
  892 F. Supp. 2d 847 (S.D. Tex. 2012) ...................................................22

*Empire HealthChoice Assurance, Inc. v. McVeigh*,
  547 U.S. 677 (2006).................................................................................17

*Emps. Retirement System of Texas v. Blount*,
  709 S.W.2d 646 (Tex. 1986)....................................................................14

*Encompass Off. Sols., Inc. v. Conn. Gen. Life Ins. Co.*,
  No. 3:11-CV-02487-L, 2012 WL 3030376 (N.D. Tex. July 25, 2012) ....................8

*Evans v. Tubbe*,
  657 F.2d 661 (5th Cir. 1981) ....................................................................6

*Experience Infusion Ctrs., LLC v. Blue Cross & Blue Shield of Tex.*,
  No. CV H-19-5040, 2022 WL 1289342 (S.D. Tex. Apr. 29, 2022) ...................12, 29

*Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC*,
  No. 4:13-CV-307, 2014 WL 1912388 (E.D. Tex. May 13, 2014)............................6

*Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp.*,
  No. CV H-16-549, 2017 WL 1231026 (S.D. Tex. Apr. 4, 2017) ...........................28

*Hallman v. Safeway Stores, Inc.*,
  368 F.2d 400 (5th Cir. 1966) ....................................................................9

*Hayes v. Prudential Ins. Co.*,
  819 F.2d 921 (9th Cir. 1987) ...................................................................18

*Hollingsworth v. Perry*,
  570 U.S. 693 (2013)..................................................................................10

*Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*,
  143 F.3d 1006 (5th Cir. 1998) ....................................................................5

*Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*,
  995 F. Supp. 2d 587 (N.D. Tex. 2014) ....................................................26

*Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga., Inc.*,
  No. 3:12-CV-1607-O, 2014 WL 360291 (N.D. Tex. Feb. 3, 2014) ...........19, 24, 25

*Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
  892 F.3d 719 (5th Cir. 2018) ...................................................................24

*Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*,
  No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244
  (C.D. Cal. Sept. 30, 2016).........................................................................................18

*Kirby v. Health Care Serv. Corp.*,
  88 F. Supp. 3d 717 (W.D. Tex. 2015)...............................................................16, 17

*United States ex rel. Little v. Triumph Gear Sys., Inc.*,
  870 F.3d 1242 (10th Cir. 2017) ............................................................................7

*Livingston v. Blue Cross & Blue Shield of Ala.*,
  788 F. Supp. 545 (S.D. Ala. 1992),
  *aff'd*, 996 F.2d 314 (11th Cir. 1993).....................................................................18

*Lujan v. Defs. of Wildlife*,
  504 U.S. 555 (1992)..................................................................................5, 12, 30

*McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*,
  No. 7:14-CV-913, 2015 WL 9257154 (S.D. Tex. Dec. 14, 2015)...................14, 15

*Menchaca v. Chrysler Credit Corp.*,
  613 F.2d 507 (5th Cir. 1980) ................................................................................5, 6

*Menendez v. Timberblinds, LLC*,
  No. 4:21-CV-914, 2022 WL 657970 (E.D. Tex. Mar. 4, 2022) ...............................8

*Mentis El Paso, LLP v. Health Care Serv. Corp.*,
  58 F. Supp. 3d 745 (W.D. Tex. Sept. 12, 2014) ....................................................18

*Moore v. Allstate Tex. Lloyd's*,
  742 F. App'x 815 (5th Cir. 2018) .........................................................................26

*Paterson v. Weinberger*,
  644 F.2d 521 (5th Cir. 1981) ..................................................................................6

*Ramming v. United States*,
  281 F.3d 158 (5th Cir. 2001) ..................................................................................5

*Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*,
  No. 3:15-CV-3632-B, 2017 WL 3658841
  (N.D. Tex. Aug. 24, 2017) ....................................................................................12

*River Consulting, Inc. v. Sullivan*,
  848 S.W.2d 165 (Tex. App.—Houston [1st Dist.] 1992, writ denied),
  *overruled on other grounds by Formosa Plastics Corp. USA, v.*
  *Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998)...........................9

*Rose v. Beaumont Indep. Sch. Dist.*,
  240 F.R.D. 264 (E.D. Tex. 2007) .......................................................................7

*S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*,
  599 F.2d 707 (5th Cir. 1979) ............................................................................7

*Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*,
  No. 5-16-CV-01094-FB-RBF, 2018 WL 4211741
  (W.D. Tex. Sept. 4, 2018) ...............................................................................11

*St. Luke's Episcopal Hosp. Corp. v. Stevens Transport, Inc.*,
  172 F. Supp. 2d 837 (S.D. Tex. 2001) .............................................................28

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*,
  620 S.W.3d 458 (Tex. App.—Dallas 2021),
  *aff'd*, 659 S.W.3d 424 (Tex. 2023) ..............................................................30

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*,
  659 S.W.3d 424 (Tex. 2023) ......................................................................12, 30

*Texienne Physicians Med. Assoc., PLLC . Health Care Serv.
  Corp.*, No. 3:22-CV-591-G, 2023 WL 2799726
  (N.D. Tex. Apr. 4, 2023) .................................................................................25

*TransUnion LLC v. Ramirez*,
  141 S. Ct. 2190 (2021) ................................................................................9, 10

*Turner v. Peerless Indemn. Ins. Co.*,
  No. 07-17-00279-CV, 2018 WL 2709489
  (Tex. App.—Amarillo June 5, 2018, no pet.) .................................................26

*UICI v. Gray*,
  No. 3:01-CV-0921-L, 2002 WL 356753 (N.D. Tex. Mar 1, 2002) ..................9

*United Motorcoach Ass'n, Inc. v. City of Austin*,
  851 F.3d 489 (5th Cir. 2017) ..........................................................................20

*USAA Tex. Lloyds Co. v. Menchaca*,
  545 S.W.3d 479 (Tex. 2018) ...........................................................................26

*Uzodinma v. JPMorgan Chase Bank, N.A.*,
  No. 3:13-CV-5010-L, 2014 WL 4055367
  (N.D. Tex. Aug. 14, 2014) ..............................................................................27

*W.N.J. v. Yocom*,
  257 F.3d 1171 (10th Cir. 2001) ........................................................................7

**Statutes/Rules**

45 C.F.R. § 147.138(b)(3)(i)(B) ..........................................................................23

48 C.F.R. § 1652.216–71(b) ...............................................................................18

5 U.S.C. § 8902(m)(1) ........................................................................................17

29 U.S.C. § 1144(a) ............................................................................................28

42 U.S.C. § 300gg–19 ....................................................................................22, 23

42 U.S.C. § 1395x(e)(7) ......................................................................................23

42 U.S.C. § 18022(b)(4)(E) .................................................................................22

34 Tex. Admin. Code § 41.50 ..............................................................................16

34 Tex. Admin. Code § 41.50 ..............................................................................16

Tex. Ins. Code § 1271.155 ...............................................................................4, 30

Tex. Ins. Code § 1301 .....................................................................................20, 21

Tex. Ins. Code § 1551.352 ..............................................................................13, 14

Tex. Ins. Code § 1575.002 ...................................................................................16

Fed. R. Civ. P. 5.2 .................................................................................................7

**Other Authorities**

80 Fed. Reg. 72192-01 .........................................................................................22

Defendant Blue Cross and Blue Shield of Texas, a division of Health Care Service Corporation, a Mutual Legal Reserve Company, ("BCBSTX"), respectfully moves this Court to dismiss Plaintiffs' Third Amended Complaint (the "Complaint") (Dkt. 44) first, pursuant to Federal Rules of Civil Procedure 12(b)(1) for lack of standing or subject matter jurisdiction and, second, pursuant to Rule 12(b)(6) for failure to state a claim.

## PRELIMINARY STATEMENT

Plaintiffs' Complaint must be dismissed under Rule 12(b)(1) because this Court lacks subject matter jurisdiction. The Complaint rests on the central allegation that BCBSTX has uniformly under-reimbursed Plaintiff Lonestar 24HRER Management, LLC ("Lonestar") on claims it made for coverage of emergency services under hundreds of Lonestar's patients' separate health benefit plans and policies. Lonestar has no contractual or other relationship with BCBSTX that gives it standing to sue, or to state a claim for relief on its own behalf. Rather, in the Complaint Lonestar asserts causes of action that it alleges were contractually assigned (*i.e.*, transferred) to it by some 800 plus patients. The Complaint also purports, at the same time, to assert the very same causes of action by the more than 800 patients—not actually identified in the Complaint by name— who received services from Lonestar (collectively the "Patient Plaintiffs").[1] The Complaint therefore fails to satisfy several prerequisites for this Court to exercise subject matter jurisdiction over the claims asserted.

First, contrary to the plain requirements of the Federal Rules, the Patient Plaintiffs have filed suit anonymously. Since, the anonymous Patient Plaintiffs do not meet any of the exceptional

---

[1] Lonestar alleges that it has been named the legal representative of the Patient Plaintiffs and is authorized to bring suit in their name. Compl. ¶ 1 ("Each of these individual Patients not only assigned benefits to Lone Star, but also appointed Lone Star as their personal representative to pursue administrative appeals, and to bring a lawsuit, if necessary to secure health benefits for the emergency medical care received during their admissions to Lone Star.").

circumstances allowing for proceeding anonymously, the Complaint fails to plead claims on their behalf over which this Court has jurisdiction.

Second, for each of the heath care claims identified in Exhibit 1, the Complaint alleges that each cause of action is brought both by Lonestar and, simultaneously, by an individual Patient Plaintiff.  Plaintiffs recognize that only one of these two parties can actually own the cause of action asserted against BCBSTX, and therefore have Article III standing, but they will contend that they may plead standing in the alternative—*i.e.* that one of them has Article III standing, but both may sue until some later point in the case when discovery will allegedly reveal which party truly had the right to sue in the first place.  But that is not the law in the Fifth Circuit, or anywhere. There is no "alternative pleading" exception to Article III or the Court's duty to ensure it has subject matter jurisdiction over each claim asserted by each Plaintiff.

Third, as to Lonestar—which relies solely on alleged assignments to bring the claims that it asserts as a Plaintiff—the Complaint concedes that not every one of Lonestar's patients actually executed an assignment.  In other words, Lonestar admits in the Complaint that it may not have standing to bring some of the claims it asserts.  And fourth, also only as to Lonestar, even for those patients that did execute an assignment in favor of Lonestar, the plain language of the assignment quoted in the Complaint does not transfer the right to bring bad faith and negligent misrepresentation claims, and therefore Lonestar lacks Article III standing to bring those causes of action as well.

Even if the Court were to look past the subject matter jurisdiction deficiencies in the Complaint, all of the causes of action must be dismissed under Rule 12(b)(6) for failure to state a claim.  Each of Plaintiffs' causes of action relies on one of three legal bases for the proposition that BCBSTX underpaid Lonestar for the services provided to the Patient Plaintiffs: BCBSTX's

manner of determining the payment amounts allegedly violated either (1) the Texas Insurance Code, (2) the Affordable Care Act's regulations, or (3) the unspecified terms of the Patient Plaintiffs' insurance contracts or ERISA-governed health plans. *See, e.g.*, Compl. ¶¶ 14–21. As to Plaintiffs' theories that BCBSTX payments were not consistent with Texas and federal law, Plaintiffs' claims fail on their face because they are premised on a fundamentally incorrect reading of those statutes. *Id.* ¶¶ 14–19.

Finding no support in the text of the federal and Texas law that they cite in the Complaint, Plaintiffs' fallback theory is that BCBSTX's payments violated the unidentified terms of the more than 800 Patient Plaintiffs' health plans. But Plaintiffs plead no facts to support the bald assertion that any of their health plans, let alone all of them, required a different amount to be paid to Lonestar. Not one of the Patient Plaintiffs attaches, or even quotes from, her insurance contract terms supporting the allegation that a higher amount of coverage was required. Rule 8, *Twombly*, and this Circuit's jurisprudence require more than conclusory assertions to get past Rule 12(b)(6)—the Patient Plaintiffs must plead facts making it plausible that their health plans required a different, and higher, level of reimbursement for out-of-network emergency care.

Although these core deficiencies doom the Complaint as a whole, Plaintiffs' individual causes of action also require dismissal for a variety of additional reasons explained herein.

## BACKGROUND

Lonestar is a for-profit, privately held limited liability company that operates a facility licensed under Texas law as a freestanding emergency care facility ("FEC"). Unlike hospitals, which have full-service acute care capabilities, Lonestar cannot admit patients or provide "supplemental or outpatient treatment" for patients who present with an emergency. Compl. ¶ 11. In other words, patients who choose to receive emergency care from Lonestar over a hospital emergency room, may nevertheless need to be transferred to a hospital. Lonestar is out-of-network

DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AM. COMPLAINT                    3

and thus has no contractual relationship with BCBSTX and no agreed rate of reimbursement for services rendered to members of Blue Cross or Blue Shield insured or administered health plans.[2] J.H. and the approximately 882 other Patient Plaintiffs fictitiously identified in Exhibit 1 are persons who allegedly received emergency medical services at Lonestar.  Compl. at 1, ¶ 1.

Plaintiff Lonestar's original (Dkt. 1) and first amended complaints (Dkt. 6) both attached an exhibit listing more than 800 claims for which Lonestar asserted its patients had assigned their rights to policy benefits to it.  Pursuant to this Court's Standing Order, BCBSTX sent Plaintiffs written notice of the deficiencies in the first amended complaint and the grounds on which it intended to file a motion to dismiss.  Among other issues, BCBSTX raised that the claims list appeared to contain multiple types of claims for which BCBSTX was not the proper defendant. After the parties conferred, Plaintiff gave notice to the Court pursuant to the Standing Order that it would amend its complaint.  *See* Pl's Advisory Statement (Dkt. 13).

Plaintiff Lonestar then filed its second amended complaint (Dkt. 17); but rather than dropping claims or adding factual allegations to address BCBSTX's arguments, Plaintiff tried a different tactic—deleting any information identifying the claims at issue in an effort to obscure, not clarify, the basis of its suit.[3]  Accordingly, BCBSTX filed its Motion to Dismiss Plaintiff's Second Amended Complaint ("SAC").  Dkts. 21, 22.

---

[2] To create the appearance of economic injury to patients, Plaintiffs  allege throughout the Complaint that because Lonestar is out of network, its patients must pay the difference between what it charges and what BCBSTX reimburses, known as the "balance bill" or "surprise bill."  *See* Compl. ¶ 10, 26, 36, 39, 40, 82, 108.  But that practice has been illegal with respect to Texas insured patients since January 1, 2020.  Tex. Ins. Code § 1271.155(g); *id*. § 1301.0053.  Texas law prohibits Lonestar from balance billing insured patients who receive emergency care.  Rather, those patients may only be billed their portion of the amount determined payable by the insurer, no more.  Tex. Ins. Code §§ 1271.155(g); 1301.0053(b); 1301.155(d).

[3] BCBSTX assumed this was an oversight and reached out to Plaintiff's counsel, but Plaintiff's counsel confirmed Plaintiff intended to file their second amended complaint without a claims list.

After briefing was concluded on the motion to dismiss, Plaintiff moved for and was granted leave to amend its complaint. Dkts. 34, 44. First, the Third Amended Complaint purports to join more than 800 of Lonestar's former patients as parties (though such patients are not actually named). Second, Plaintiffs re-attached to the complaint Exhibit 1 listing the claims at issue, that Lonestar had previously deleted from the SAC. The proposed amendment did not address any of the other deficiencies raised in BCBSTX's then-fully briefed motion to dismiss. The Court granted leave to file and the Third Amended Complaint is now the operative complaint.

## ARGUMENT AND AUTHORITIES

I.   **THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE PLAINTIFFS LACK STANDING**

### A.   Legal Standard for Rule 12(b)(1) Dismissal for Lack of Standing

A complaint must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) "when the court lacks the statutory or constitutional power to adjudicate the case." *Home Builders Ass'n of Miss., Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998). For subject matter jurisdiction to exist under Article III of the Constitution, each plaintiff in federal court must establish standing to bring each proposed cause of action. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). The party asserting jurisdiction bears the burden of proving it. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Id.*

A defendant may bring either, or both, a facial or factual attack under Rule 12(b)(1) to challenge a plaintiff's lack of standing. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980). A facial attack is based on the sufficiency of the plaintiff's pleadings, while a factual attack allows the Court to consider whether there are facts outside of the pleadings

defeating standing.  *Id.*  In this case, the Court can dismiss the Complaint in its entirety for lack of standing under a facial attack.  Nonetheless, BCBSTX also brings a factual attack with regard to dismissal of claims that relate to the Employee Retirement System of Texas, the Teacher Retirement System of Texas, or the Federal Employee Program health plans.

Because a facial attack is based on the pleadings, courts analyze it under the same standards applicable to Rule 12(b)(6) motions.  *Gaylor v. Inland Am. McKinney Towne Crossing LP, LLC*, No. 4:13-CV-307, 2014 WL 1912388, at *2 (E.D. Tex. May 13, 2014) (granting motion to dismiss facial attack under Rule 12(b)(1)).  The court accepts as true plausible factual allegations but need not accept legal conclusions or bare assertions.  *Id.*  Under a factual attack, the defendant may submit "affidavits, testimony, or other evidentiary materials," and the plaintiff is similarly required to submit facts proving standing.  *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. 1981).  Once a factual challenge is raised, "no presumptive truthfulness attaches to the [plaintiff's] jurisdictional allegations, and the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *Evans v. Tubbe*, 657 F.2d 661, 663 (5th Cir. 1981).

### B.  The Court Lacks Subject Matter Jurisdiction Over Unnamed Parties

"The Federal Rules of Civil Procedure require plaintiffs to disclose their names in the instrument they file to commence a lawsuit."  *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. 1981). Such public access to information "is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings."  *Id.* (citation omitted).  However, the Complaint now supposedly asserts claims on behalf of "Patient Plaintiffs[,]" but explicitly states that "the Patient Plaintiffs ***will not*** be identified." Compl. at 1 (emphasis added).  Instead, Exhibit 1 lists initials for each of the more than 800 patients now purportedly plaintiffs in this case.  *See* Compl., Ex. 1.

The Complaint fails to comply with Rule 10(a) requiring a party commencing a civil action

to disclose his or her name in the complaint, and Rule 17 that every "action must be prosecuted in the name of the real party in interest." *See* Fed. R. Civ. P. 10(a); *id.* 17(a); *see also Rose v. Beaumont Indep. Sch. Dist.*, 240 F.R.D. 264, 266 (E.D. Tex. 2007) (opining that the Federal Rules "do not include provisions for plaintiffs wishing to proceed anonymously") (citing *W.N.J. v. Yocom*, 257 F.3d 1171, 1172 (10th Cir. 2001) (holding parties cannot "proceed anonymously or under fictitious names such as initials")).[4]  Therefore, as to unnamed parties, "the federal courts lack jurisdiction . . . as a case has not been commenced with respect to them."  *W.N.J.*, 257 F.3d at 1172; *see also Doe v. Bush*, No. SA-04-CA-1186-FB, 2005 WL 2708754, at *5 (W.D. Tex. Aug. 17, 2005) ("[T]he Court lacks subject matter jurisdiction over claims brought by an anonymous plaintiff.").

Although the Fifth Circuit has allowed plaintiffs to proceed anonymously under certain exceptional circumstances, Plaintiffs have not sought leave to proceed anonymously, let alone made the necessary factual showing of exceptional circumstances that would justify anonymity. *S. Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe*, 599 F.2d 707, 712 (5th Cir. 1979).  Because the Patient Plaintiffs have failed to proceed under their real names, and concede they **will not** proceed under their real names, *see* Compl. at 1, the Court lacks subject matter jurisdiction over them and their claims.  *See Stegall*, 653 F.2d at 184 (stating "the district judge determined that he lacked jurisdiction to decide a case brought by plaintiffs who wished to prevent public disclosure of their identities."); *United States ex rel. Little v. Triumph Gear Sys., Inc.*, 870 F.3d 1242, 1249–50 (10th Cir. 2017) (holding that absent permission by the district court to

---

[4] Notably, though Fed. R. Civ. P. 5.2 specifically addresses various types of information that should be redacted on filings due to privacy concerns, none of that information includes the names of real parties in interest, unless such parties are minors (who are able to be identified by initials). Plaintiffs have made no claims that the Patient Plaintiffs are minors.

proceed anonymously, "federal courts lack jurisdiction over the unnamed parties, as a case has not been commenced with respect to them").

### C.   The Court Cannot Have Subject Matter Jurisdiction Over Both Lonestar and the Patient Plaintiffs for the Same Claims at the Same Time

The Complaint asserts that every claim and cause of action has two plaintiffs, both suing to enforce the same rights—Lonestar, the alleged assignee, and the Patient Plaintiff (also the alleged assignor).  *See* Compl. at 1; *id.* ¶ 89 (Patients "assigned their benefits under these plans and/or insurance contracts to Lone Star. Lone Star, therefore, has standing in their capacity as assignee to enforce the terms of the non-ERISA BCBS Plans.  Likewise, Lone Star has been authorized by the Patients to act as the authorized legal representative of the Patients."); *see also id.* ¶¶ 76, 95, 99.  However, the Patient Plaintiffs (as real parties in interest) and Lonestar (as an alleged assignee of those same patients' rights) cannot both have standing to assert the same causes of action on the same claims at the same time.

In Texas, "an assignment is a manifestation to another person by the owner of a right indicating his intention to transfer, without further action or manifestation of intention, his right to such other person or third person."  *Encompass Off. Sols., Inc. v. Conn. Gen. Life Ins. Co.*, No. 3:11-CV-02487-L, 2012 WL 3030376, at *5 (N.D. Tex. July 25, 2012) (internal quotations omitted) (citing *Harris Methodist Fort Worth v. Sales Support Servs.*, 426 F.3d 330, 334 (5th Cir. 2005) (applying Texas law)).  Under Texas law, "upon assignment of a *right*, the assignor's interest in that *right* is extinguished."  *Menendez v. Timberblinds, LLC*, No. 4:21-CV-914, 2022 WL 657970, at *8 (E.D. Tex. Mar. 4, 2022) (citing *Nelson v. Vernco Const., Inc.*, 406 S.W.3d 374, 378 (Tex. App.—El Paso 2013, pet. granted) ("When an assignor of a cause of action has not retained some right or interest in the cause of action, the assignor is barred from bringing suit.") (collecting cases), *judgment rev'd on other grounds*, 460 S.W.3d 145 (Tex. 2015)).  Thus, after an assignment,

"*an assignor is no longer a real party in interest.*"  *UICI v. Gray*, No. 3:01-CV-0921-L, 2002 WL 356753, at \*6 (N.D. Tex. Mar 1, 2002) (holding once "a cause of action is assigned or transferred, the assignee becomes the real party in interest with the authority to prosecute the suit to judgment") (emphasis added).

Yet, the Complaint pleads ***both*** that the Patient Plaintiffs assigned any rights they had to healthcare benefits to Lonestar and that the Patient Plaintiffs themselves are real parties in interest as to those same claims and therefore retain Article III standing to sue.  But, if the Patient Plaintiffs assigned their rights to Lonestar, then the Patient Plaintiffs cannot be real parties in interest and thus lack standing to bring suit.  *See River Consulting, Inc. v. Sullivan*, 848 S.W.2d 165, 169 (Tex. App.—Houston [1st Dist.] 1992, writ denied), *overruled on other grounds by Formosa Plastics Corp. USA, v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 46–47 (Tex. 1998) (holding an assignor is precluded from bringing suit unless the assignor has retained some right or interest in the claim); *Hallman v. Safeway Stores, Inc.*, 368 F.2d 400, 403 (5th Cir. 1966) ("It is established Texas law that . . . unless the assignor has retained some interest [in the assignment], he, the assignor, is precluded from bringing suit.").  Lonestar and the Patient Plaintiffs cannot both be real parties in interest on the same claims, at the same time.  *UICI*, 2002 WL 356753, at \*6 (observing "an assignor is no longer a real party in interest").

Plaintiffs' effort to have their cake and eat it too relies on a made-up concept of pleading *standing* in the alternative.  Plaintiffs' position is contrary to longstanding caselaw which holds that "*[e]very party* that comes before a federal court must establish that it has standing to pursue its claims." *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013) (emphasis added); *see also TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2208 (2021) (observing "standing is not dispensed in gross" and a plaintiff "must demonstrate standing for each claim that [he]

press[es] and for each form of relief [he] seek[s]"); *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (same).[5]   Additionally, Plaintiffs' suggestion that the Court can simply kick the standing can down the road to a later stage of the case finds no support in Article III jurisprudence. *See Hollingsworth v. Perry*, 570 U.S. 693, 705 (2013) ("Most standing cases consider whether a plaintiff has satisfied the requirement when filing suit, but Article III demands that an 'actual controversy' persist throughout all stages of litigation.").

The Patient Plaintiffs possess the insurance policies and health plans on which they base their claims as well as any written assignments executed in favor of Lonestar.  It is incumbent upon them to sort out *before filing suit* which among them—the patient or Lonestar—currently has the right, if either, to sue BCBSTX (if BCBSTX is even the correct defendant). Even if there was an "alternative pleading" exception to the requirements of Article III—and there is not—it would not be justified here where Plaintiffs' exercise of reasonable pre-suit diligence would allow them to decide between themselves who is the real party in interest.  Because Lonestar and the Patient Plaintiffs cannot both be real parties in interest on the same claims at the same time, Plaintiffs' Complaint must be dismissed.

### D. Lonestar's Assignment Allegations are Insufficient to Confer Article III Standing

Even if the Court could look past the Article III problems caused by Plaintiffs' "alternative standing" theory, the Complaint allegations are insufficient to establish standing.

#### 1. *Lonestar failed to plead the existence of legal authority to prosecute all of the claims at issue.*

---

[5] Although for "claims for declaratory or injunctive relief, standing may be satisfied by the presence of 'at least one individual plaintiff who has demonstrated standing to assert the[] [contested] rights as his own,'" *APFA Inc. v. UATP Mgmt., LLC*, 537 F. Supp. 3d 897, 903 (N.D. Tex. 2021), for plaintiffs seeking to recover individual money damages, every plaintiff must demonstrate Article III standing.  *See TransUnion*, 141 S. Ct. at 2208.

Plaintiffs allege that for each patient "whose admissions are made the basis of this lawsuit and **when able**, the [patient] . . . execute[d] a set of documents that included an assignment of benefits and a document appointing Lone Star as the patient's authorized personal representative." Compl. ¶ 42 (emphasis added); *see id.* ¶ 43.  Because Lonestar brings Counts I through IV as an assignee and/or legal representative of the Patient Plaintiffs, it must plead it has received assignments and authorizations from each of those patients to have standing to assert those causes of action, whether by virtue of an assignment or as the designated legal representative of each Patient Plaintiff.  *Sky Toxicology, Ltd. v. UnitedHealthcare Ins. Co.*, No. 5-16-CV-01094-FB-RBF, 2018 WL 4211741, at *3 (W.D. Tex. Sept. 4, 2018) (collecting cases for the proposition that healthcare providers like Lonestar must plead it has received assignments from *all* patients whose claims are at issue).  But the Complaint allegations acknowledge that not all Patient Plaintiffs executed documents legally transferring rights or granting authority to Lonestar.  In other words, Plaintiffs concede that for some of the more than 800 claims at issue, Lonestar does not have the legal authority to bring suit.  Thus, Lonestar lacks standing to assert its claims under Counts I through IV with respect to patients who never assigned or authorized Lonestar the right to do so and those claims must be dismissed as to Plaintiff Lonestar.

### 2.  *The Court lacks subject matter jurisdiction over tort causes of action that Lonestar purports to bring as an assignee (Counts III and IV).*

For Counts III and IV, Lonestar seeks to invoke the Court's jurisdiction based on the bald assertion that the Patient Plaintiffs assigned to Lonestar any causes of action they had against BCBSTX for bad faith insurance practices and negligent misrepresentation.  Compl. ¶¶ 95, 98.  But the assignment language Lonestar relies on in the Complaint does not transfer any tort claims.  *Id.* ¶ 42.   Indeed, inadvertently acknowledging this deficiency elsewhere in the Complaint, Plaintiffs plead only that Lonestar has "standing to pursue plan benefits . . . to recover payment

pursuant to plan provisions." *Id.* ¶ 43.  In the Fifth Circuit, "[a] vast majority of courts have rejected the contention that an assignment of ERISA benefits claims assigns non-benefit rights." *Rapid Tox Screen LLC v. Cigna Healthcare of Tex. Inc.*, No. 3:15-CV-3632-B, 2017 WL 3658841, at *7 (N.D. Tex. Aug. 24, 2017) (citing *Tex. Gen. Hosp., LP v. United Healthcare Servs., Inc.*, No. 3:15-CV-2096-M, 2016 WL 3541828, at *8 (N.D. Tex. June 28, 2016) (collecting cases)). Because Lonestar has not pleaded—and cannot plead based on the plain language of the alleged assignments—that the Patient Plaintiffs transferred anything other than the right to receive benefits, Lonestar lacks standing to pursue any tort causes of action that its patients may have had. Accordingly, as to Plaintiff Lonestar, Counts III and IV should be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1). *See* Fed. R. Civ. P. 12(b)(1); *Lujan*, 504 U.S. at 560.

In addition, Lonestar lacks standing to bring a bad faith claim, as an assignee, because bad faith claims cannot be assigned.  Causes of action for bad faith are personal to insureds and non-assignable.  *See, e.g., Experience Infusion Ctrs., LLC v. Blue Cross & Blue Shield of Tex.*, No. CV H-19-5040, 2022 WL 1289342, at *2–3 (S.D. Tex. Apr. 29, 2022) (rejecting argument that good faith and fair dealing claim could be brought as an assignee and emphasizing that the "law disfavors extending the duty of good faith and fair dealing to a third-party health care provider"); *cf Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc*., 659 S.W.3d 424, 439 (Tex. 2023) (noting that "claims and damages [that] are personal and punitive rather than property-based and remedial" are not assignable and holding, therefore, that bad faith claims were unassignable).  Thus, Lonestar lacks standing to bring a bad faith claim as an assignee.

**E.**     **The Court Lacks Subject Matter Jurisdiction Over a Number of the Insurance Claims Listed On Exhibit 1 to the Complaint**

**1.**     ***Plaintiffs cannot establish standing for claims that are preempted by state or federal law and in which BCBSTX has sovereign immunity.***

Plaintiffs purport to assert causes of action "in connection with claims for services provided to the patients as identified on Exhibit 1." *See* Compl. ¶¶ 62, 90.  However, Exhibit 1 contains several different groups of claims relating to health plans or insurance policies for which this Court lacks jurisdiction as a matter of law as a result of preemption and sovereign immunity.

*a.     ERS Claims*

The Court lacks jurisdiction with respect to insurance claims on Plaintiffs' Exhibit 1 that relate to healthcare coverage provided by the Employee Retirement System of Texas ("ERS") because the exclusive remedy is through ERS' administrative process, and both ERS and BCBSTX are immune from suit.[6]  The State of Texas provides various group coverages and benefits to State employees, dependents, and retirees pursuant to Chapter 1551 of the Texas Insurance Code, known as the Texas Employees Group Benefits Act ("the Act").  Sections 1551.055 and 1551.201 of the Act empower and direct the Board of Trustees of ERS, a State agency provided for in Chapters 811–815 of the Texas Government Code, to establish group coverage plans for State employees, dependents, and retirees as the Trustees, in their discretion, determine to be advisable. Under § 1551.051 of the Act, the administration and implementation of the Act are "vested solely in the board of trustees."

With regard to benefits disputes under ERS plans, the Act provides for an exclusive set of remedies and an exclusive forum for resolving such disputes.  Section 1551.352 of the Act places in the ERS Executive Director "exclusive authority to determine all questions relating to . . .

---

[6] *See* Declaration of Shelly Rainey, Exhibit A, ¶ 6 ("Rainey Declaration").

payment of a claim arising from group coverages or benefits provided under this Chapter." Tex. Ins. Code § 1551.352. The Legislature has also been direct regarding the exclusive nature of the remedies provided by ERS through the agency's administrative process: "The remedies provided under this Act are the *exclusive remedies* available to an employee, participant, annuitant, or dependent." *Id.* § 1551.014 (emphasis added). The Texas Supreme Court has repeatedly confirmed the exclusive jurisdiction of ERS over claims relating to benefits. In *Employees Retirement System of Texas v. Blount*, 709 S.W.2d 646, 647 (Tex. 1986), the Texas Supreme Court confirmed that the Act grants to ERS—and only ERS—final binding authority to adjudicate claims involving ERS-administered benefits and coverages. Twenty years later, in *Blue Cross Blue Shield of Texas v. Duenez*, the Court reaffirmed its prior holding: "The plain language of the ERS Act makes clear that the administrative appeals process is the 'exclusive' means of resolving a claim for payment of ERS-derived benefits." 201 S.W.3d 674, 676 (Tex. 2006).

Moreover, the Southern District of Texas has dismissed claims against ERS' then third-party administrator based on ERS' exclusive jurisdiction over benefit and other disputes arising under its plans. *See McAllen Anesthesia Consultants, P.A. v. United Healthcare Servs., Inc.*, No. 7:14-CV-913, 2015 WL 9257154 (S.D. Tex. Dec. 14, 2015) (relying on *Duenez* in dismissing provider's claims relating to under-payment of benefits for lack of subject matter jurisdiction).[7]

Not only do Plaintiffs' causes of action relating to ERS plans fail because of the exclusive jurisdiction vested in ERS to resolve disputes, but they also fail under the Eleventh Amendment

---

[7] Moreover, the Court lacks statutory jurisdiction. No person, whether a participant or beneficiary, has the right to challenge in a court any determination under the plan, regardless of whether the claim is brought against the state of the state's administrator. *See* Tex. Ins. Code. § 1551.356(b) ("A person has *no standing* to appeal a determination of the executive director under this subchapter or to pursue a private cause of action against the state, the board of trustees, the retirement system, the executive director, *an administering firm*. . . .") (emphasis added).

and the doctrine of sovereign immunity.  "ERS is a 'public entity subject to sovereign immunity from suit as a matter of law.'"  *McAllen Anesthesia*, 2015 WL 9257154, at \*5 (internal citation omitted).  Pursuant to § 1551.056(a) of the Act, the ERS Board of Trustees was authorized to "contract with an entity to act for the board as an independent administrator or manager of the coverages, services, and benefits authorized under this chapter."  It was in this administrative capacity that BCBSTX processed Plaintiffs' claims relating to ERS plan members.  Importantly, in *McAllen Anesthesia*, the court held that ERS' sovereign immunity extends to third-party claims administrators, like BCBSTX here, regardless of whether the claims asserted by a provider sound in tort or contract if, at the end of the day, they relate to benefits owed under the ERS plan:

> Thus, the Court finds that both case law and the Plan in question here extend immunity to [the third-party claims administrator] as it relates to the handling and processing of claims of HealthSelect members. In particular, the Court finds that extending immunity to [the third-party claims administrator] protects Texas' public treasury. As noted, although [the provider] asserts various causes of action, what it primarily seeks is to receive payment for its anesthesia services . . . . It is ERS that is responsible for the payment of benefits even though they are funneled through [the third-party claims administrator].

*McAllen Anesthesia*, 2015 WL 9257154, at \*8.  Therefore, the Court lacks jurisdiction over Plaintiffs' causes of action based on claims related to ERS health benefits, and thus all ERS claims should be dismissed.

### b.    TRS Claims

Similarly, the Court lacks jurisdiction regarding insurance claims on Plaintiffs' Exhibit 1 concerning claims arising under health plans provided by the Teacher Retirement System of Texas ("TRS") because Plaintiffs' exclusive remedy is through the TRS's administrative process, and both TRS and BCBSTX are immune from suit.[8]

The State of Texas provides health coverage for Texas public school employees and

---

[8] *See* Rainey Declaration, ¶ 7.

retirees. *See generally* Tex. Ins. Code Chapters 1575, 1579. The public school plans are governed exclusively by a public entity trustee, in this instance TRS. Tex. Ins. Code §§ 1575.002; 1579.002. TRS plans also have a mandatory and exclusive administrative process for payment or benefit disputes. *See* 34 Tex. Admin. Code § 41.50. And, TRS plans have no provision for an appeal to a district court. The only remedy available is the administrative process. *See* 34 Tex. Admin. Code §§ 41.50(a)(2), (b)(14)–(15).

Further, BCBSTX, as TRS's contracted claims administrator, is immune from suit under the Eleventh Amendment and principles of sovereign immunity. *See Kirby v. Health Care Serv. Corp.*, 88 F. Supp. 3d 717, 723 (W.D. Tex. 2015). In *Kirby*, the court previously held that BCBSTX was entitled to sovereign immunity because under the contract then in place with TRS, "'TRS ha[d] the final decision-making authority and discretion to determine the intent, scope, design, meaning, and implementation' of the TRS Plan" and "BCBS's role is to 'assist TRS' and to 'execute, apply, and carry out TRS decisions and guidelines.'" *Kirby*, 88 F. Supp. 3d at 721–22. Additionally, the court found that TRS was solely responsible for the funding and payment of liabilities under the insurance plans, and any "judgment against BCBS would be the responsibility of TRS, and thus, would implicate the state treasury." *Id.* at 722. Therefore, the court found "BCBS is a state instrumentality shielded by state sovereign immunity." *Id.* at 723.

The current contract between BCBSTX and TRS maintains the same allocation of authority and financial responsibility for benefits-related expenses as the contract analyzed in *Kirby*.[9] BCBSTX remains, under the current contract, subordinate to TRS and the TRS health plans are fully funded by the state-controlled fund.[10] Thus, BCBSTX remains entitled to sovereign

---

[9] *See* Declaration of Karen Haywood, Exhibit B, ¶ 3.
[10] *See id.,* Ex. 1 §§ 12.1(a); 6.8; 27.18.

immunity under the current contract just as it was under the prior contract analyzed in *Kirby*. Accordingly, the Court should find that BCBSTX has sovereign immunity and dismiss Plaintiffs' claims relating to the TRS plans.

c. *FEHBA Claims*

Additionally, the Court lacks jurisdiction with respect to insurance claims on Plaintiffs' Exhibit 1 that relate to the Federal Employee Program ("FEP") issued under the Federal Employee Health Benefits Act ("FEHBA") because FEHBA preempts any claim against BCBSTX.[11]  Under FEHBA, Congress gave the U.S. Office of Personnel Management ("OPM") broad authority over FEHBA plans and carriers, including authority over coverage and benefits, among other things. 5 U.S.C. § 8902(m)(1).   Therefore, FEHBA plan terms supersede state law, due to the inclusion in FEHBA of a broad express preemption provision. *Id.*  FEHBA contains the following express preemption provision, which accords preemptive effect to the terms of the OPM contract (including the terms of the incorporated Statement of Benefits):

> The terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans.

5 U.S.C. § 8902(m)(1).  The Supreme Court has explained that "under § 8902(m)(1) as it now reads, state law – whether consistent or inconsistent with federal plan provisions – is displaced on matters of 'coverage or benefits.'"  *Empire HealthChoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 686 (2006).  FEHBA preempts not only state law claims seeking payment for plan benefits, but also all state law "claims arising out of the manner in which a benefit claim is handled." *Burkey v. Gov't Emps. Hosp. Ass'n*, 983 F.2d 656, 600 (5th Cir. 1993).

Given the scope of FEHBA's preemption provision, it is unsurprising that cases have held

---

[11] *See* Rainey Declaration, ¶ 8.

that all manner of claims by FEHBA enrollees relating to coverage or benefits are preempted by FEHBA, including claims for the manner in which benefit claims were processed. *See, e.g., Botsford v. Blue Cross & Blue Shield of Montana, Inc.*, 314 F.3d 390 (9th Cir. 2002) (misrepresentation claim based on state unfair trade practices act preempted); *Burkey*, 983 F.2d at (claims regarding health benefits preempted); *Hayes v. Prudential Ins. Co.*, 819 F.2d 921 (9th Cir. 1987) (breach of contract claim preempted). Therefore, the Court lacks jurisdiction over Plaintiffs' claims related to FEHBA health benefits.

Further, Plaintiffs also lack standing to assert claims for FEHBA health benefits because BCBSTX has sovereign immunity. Courts have long recognized that contractors administering government insurance programs are immunized "to the extent that the government is exposed to financial risk." *Livingston v. Blue Cross & Blue Shield of Ala.*, 788 F. Supp. 545, 548 (S.D. Ala. 1992), *aff'd*, 996 F.2d 314 (11th Cir. 1993). Under FEHBA, the government pays the majority of the premium costs, and collects the rest from enrollees; the total is then deposited in a fund in the federal Treasury, and BCBSTX, as administrator of the Plan, then draws directly from the Treasury funds to cover both the health benefits cost and their Plan-administration expenses. 48 C.F.R. § 1652.216–71(b). And because federal Treasury funds are used not just for benefit payments but also for administrative expenses under FEHBA plans, "sovereign immunity applies regardless of whether a plaintiff is seeking FEHBA benefits or some other form of damages." *Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, No. CV 16-5229, 2016 U.S. Dist. LEXIS 136244, at *18 (C.D. Cal. Sept. 30, 2016); *see Mentis El Paso, LLP v. Health Care Serv. Corp.*, 58 F. Supp. 3d 745, 752–56 (W.D. Tex. Sept. 12, 2014) (holding that federal sovereign immunity extended to healthcare insurance carriers that contracted with OPM to administer health benefits plan established by FEHBA); *Innova Hosp. San Antonio, L.P. v. Blue Cross and Blue Shield of Ga.,*

*Inc.*, No. 3:12-CV-1607-O, 2014 WL 360291, at *4–6 (N.D. Tex. Feb. 3, 2014) (same).  Therefore, BCBSTX, as the contractor administering FEHBA, has sovereign immunity and Plaintiffs lack standing to assert claims as to FEHBA health benefit plans.

## II.   THE THIRD AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS FAIL TO STATE A CLAIM

### A.   Legal Standard for Rule 12(b)(6) Dismissal for Failure to State a Claim

To survive a Rule 12(b)(6) motion, Plaintiffs' factual allegations must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Mere legal conclusions or "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Complaint must contain "factual content [that] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and to give the defendant fair notice of the plaintiff's claims and the grounds upon which they rest.  *Id*. at 678.

### B.   Plaintiffs' Complaint Should Be Dismissed in its Entirety Because Every Cause of Action is Premised on Misstatements of Texas and Federal Law

As a threshold issue, all of Plaintiffs' causes of action are based on a fundamentally flawed legal foundation.  According to Plaintiffs, Texas statutes and federal regulations require BCBSTX to reimburse Lonestar at the "usual and customary rate."  Compl. ¶¶ 17, 19, 24.  Plaintiffs contend, without support, that the "usual and customary rate" refers to providers' self-determined *charges* for services.  *Id.*  Based on this false legal premise, Plaintiffs allege that BCBSTX has failed to reimburse Lonestar according to Texas or federal law.[12]  *Id.* ¶ 30.  But neither the Texas Insurance Code nor the Texas Administrative Code requires BCBSTX to reimburse Lonestar at, or based on,

---

[12] Plaintiffs also contend BCBSTX has failed to reimburse Lonestar according to the terms of the unidentified insurance plans at issue.  Compl. ¶ 30.  Because Plaintiffs contend the plans' terms follow the Texas and federal law at issue, all arguments herein regarding Texas and federal law apply equally to Plaintiffs' allegations concerning BCBSTX's plan terms.

its billed charges.[13]   Further, the Affordable Care Act's "greatest of three" regulation does not

apply to Lonestar's services.  Even if it did, it does not mandate reimbursement at a "usual and

customary rate," let alone at any metric based on out-of-network provider charges.

> **1.** ***The "usual and customary rate" as used in the Texas Insurance and Administrative Codes does not require payment based on provider charges.***

Neither the HMO (§1271) nor PPO (§ 1301) sections of the Texas Insurance Code define

the "usual and customary rate" as the provider's billed charges.  To the contrary, the only definition

provided by the legislature for "usual and customary rate" is that the term refers to the amount the

plan sets as the "allowable amount" and ***not*** provider charges or third-party benchmarks.  *See* Tex.

Ins. Code. §§ 1551.003(15), 1575.002(8), 1579.002(8) (defining "usual and customary rate" as

"the relevant allowable amount as described in the applicable master benefit plan document or

policy").[14]   A recent decision from the Western District of Texas is in accord, concluding that

definition "directly links the applicable rate" for emergency care to the terms of the applicable

plan—not provider charges.  *Brushy Creek Family Hosp., LLC v. Blue Cross & Blue Shield of

Tex.*, No. 1:22-CV-00464-RP, 2022 WL 6727278, at \*4 (W.D. Tex. Oct. 11, 2022), *report and

recommendation adopted sub nom. Brushy Creek Family Hosp., LLC v. Blue Cross & Blue Shield

of Tex.*, No. 1:22-CV-464-RP, 2022 WL 17732683 (W.D. Tex. Nov. 15, 2022).

Indeed, for services rendered prior to January 1, 2020, the Texas Insurance Code required

reimbursement of out-of-network emergency care at the insurer's "usual and customary rate" only

---

[13] Moreover, for any claims relating to insurance plans issued or administered by divisions within Health Care Service Corporation ("HCSC") other than BCBSTX, Plaintiffs fail to plead that Texas law would be applicable to those claims or state a cause of action under alternative state laws.

[14] Although the legislature did not define the term "usual and customary rate" in the HMO and PPO provisions, the legislature has defined the term in a parallel provision of the Insurance Code. *See United Motorcoach Ass'n, Inc. v. City of Austin*, 851 F.3d 489, 494 (5th Cir. 2017) (holding terms used in one section of a statute are generally interpreted to have the same meaning in other sections).

for HMO plans, not PPO plans.  *Id.* (noting the 2019 amendments to Tex. Ins. Code § 1301 added the "usual and customary" language). Further, Plaintiff's reliance on regulations in the Texas Administrative Code applicable to Texas PPO plans prior to 2020 is misplaced as those regulations have been invalidated as *ultra vires*.  *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins*., Cause No. D-1-GN,18-003846 (419th Judicial District, Travis County, Oct. 15, 2020).

Additionally, both the statutorily designated regulatory authority—the TDI—and the state's chief law enforcement official—the Attorney General—have explained that the "usual and customary rate" is the amount set by the insurer.  *See* Exhibit C, Defendant's Response in Opp. to Plaintiffs' Amended Traditional Motion for Summary Judgment at 24, *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, Cause No. D-1-GN,18-003846 (419th Judicial District, Travis County, filed Aug. 14, 2020) (stating that insurers "have always been allowed to . . . make their initial payment at the usual and customary 'rate,' **which is set at their discretion**") (emphasis added).  The government explained that "[b]ecause no payment methodology is attached to the term 'usual and customary rate,' EPOs and HMOs have been permitted to set their payment amounts at their discretion . . . ."  *Id.* at 22.

2.      ***The ACA's "greatest of three" regulation does not require reimbursement at the "usual and customary rate," and does not apply to FECS.***

Plaintiffs' causes of action grounded in the ACA's "greatest of three" regulation fail because the regulation is inapplicable to Lonestar's services.  Compl. ¶¶ 75, 109.  Plaintiffs admit Lonestar is not a hospital nor a department of a hospital.  *Id*. ¶¶ 8, 9, 11.  But the ACA limits the scope of "emergency services" for purposes of setting minimum reimbursement to those services provided by a ***hospital*** emergency department.

The term "emergency services" means, with respect to an emergency medical condition—

(i) *a medical* screening *examination* (as required under section 1395dd of this title) that is *within the capability of the emergency department of a hospital*, including ancillary services routinely available to the emergency department to evaluate such emergency medical condition, and

(ii) *within the capabilities of the staff and facilities available at the hospital*, such further medical examination and treatment as are required under section 1395dd of this title to stabilize the patient.

42 U.S.C. § 300gg–19a(b)(2)(B) (emphasis added).

The ACA's "essential health benefits" provision—a provision upon which Plaintiff relies, *see* Compl.¶ 19,—also plainly states that "emergency services" are those provided by a hospital emergency department. 42 U.S.C. § 18022(b)(4)(E).[15]   The ACA's statutory limitation of "emergency services" to hospital emergency departments is further bolstered by the fact that the ACA defined "emergency services" by borrowing the definition in the Emergency Medical Treatment and Labor Act ("EMTALA").[16]  *See Emergency Health Ctr. at Willowbrook, L.L.C. v. UnitedHealthcare of Tex., Inc.*, 892 F. Supp. 2d 847, 852 (S.D. Tex. 2012) ("EMTALA requires a *hospital* to care for patients experiencing a medical emergency.") (emphasis added); 42 U.S.C. § 1395x(e)(7).[17]

Further, even if the "greatest of three" regulation applied to FECs, it does not support

---

[15] Specifically it states: "(i) coverage for *emergency department services* will be provided without imposing . . . any limitation on coverage where the provider of services does not have a contractual relationship with the Policy for the providing of services . . .  that apply to *emergency department services* received from providers who do have such a contractual relationship with the plan." 42 U.S.C. § 18022(b)(4)(E) (emphasis added).

[16] *See* Final Rules for Grandfathered Plans, Preexisting Condition Exclusions, Lifetime and Annual Limits, Rescissions, Dependent Coverage, Appeals, and Patient Protections Under the Affordable Care Act, 80 Fed. Reg. 72192-01, *72213 (Nov. 18, 2015) ("In applying the rules relating to emergency services, the terms emergency medical condition, emergency services, and stabilize have the meaning given to those terms under [EMTALA].").

[17] EMTALA requires only emergency departments *within hospitals* to provide emergency services.  *See* 42 U.S.C. § 300gg-19a(b)(1) ("[P]rovides or covers any benefits with respect to services *in an emergency department of a hospital* . . . .") (emphasis added).

---

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' THIRD AM. COMPLAINT**                    22

Plaintiffs' claims.  The regulation on its face does not *require* that "emergency services" be reimbursed at the "usual and customary rate."  Rather the regulation requires reimbursement at the greatest of (i) the **amount Medicare would pay**, (ii) "the amount for the emergency service calculated using the same **method the plan generally uses** to determine payments for out-of-network services (*such as* the usual, customary, and reasonable amount)," or (iii) the **median amount negotiated with in-network providers for the same services**.   45 C.F.R. § 147.138(b)(3)(i)(B) (emphasis added).  Plaintiffs do not plead that BCBSTX failed to reimburse based on those metrics, let alone that Lonestar's unpaid billed charges are equivalent to any one of the metrics—because they are not.  Thus, Plaintiffs fail to state plausible claims based on ACA regulatory violations.

### C.   Each of Plaintiffs' Causes of Action Also Suffer From Fatal Pleading Deficiencies that Independently Require Dismissal

#### 1.   *Plaintiffs fail to state a claim for ERISA violations or breach of contract (Counts I and II).*

Plaintiffs' Complaint fails to articulate any insurance plan reimbursement requirement that BCBSTX failed to satisfy—aside from references to compliance with the Texas and federal laws discussed above—as would be necessary to plead a claim for relief under ERISA or breach of contract.  Further, the Complaint contains only one purported quotation from an unidentified plan that allegedly requires reimbursement at an Allowable Amount that is defined as "the usual or customary amount as defined by Texas law or as prescribed under applicable law or regulations."[18] Compl. ¶ 21.  Even if the Court could credit this assertion untethered from any identified plan, the plain language of the plans simply refers to the amounts required by law, which does not support

---

[18] To the extent Plaintiff suggests that the plan terms contain the same purported "requirements" as under Texas and federal law, its breach of contract and ERISA claims fail because, as explained above, Plaintiff has misconstrued that law.

Plaintiffs' claims.

Moreover, Plaintiffs do not allege the identity of the plan, that any patients had coverage under this unidentified plan, whether the plan was subject to ERISA, the relevant time period the plan was effective, complete coverage terms relevant to emergency services, or explain how the example relates to any actual claim for benefits.  This allegation falls far short of the Fifth Circuit's standard to plead improper reimbursement based on representative plan terms.  *Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc*., 892 F.3d 719, 729 (5th Cir. 2018) (concluding pleading by way of exemplar "may be sufficient to show plausibility under Twombly and *Iqbal* **when there are enough other factual allegations in the complaint to allow a court to 'draw the reasonable inference that the defendant is liable for the misconduct alleged'**") (emphasis added).

A medical provider asserting that a health provider has failed to pay what the benefit plans or policies required must allege more than mere conclusions about the plans and alleged breached terms.  *Id.  Innova* did not change that pleading standard, rather, it carved out a narrow exception to pleading claims under health insurance plans.  *Id.* at 732.  In *Innova*, the court noted that such an exception shall apply when a medical provider does not have access to the health care plans, even after a good-faith attempt, and pleads that excuse.  Therefore, the "*Innova* exception requires both (1) good-faith attempts at obtaining health insurance plan and policy information and (2) representative plans that show that the claims are plausible."  *Texienne Physicians Med. Assoc., PLLC . Health Care Serv. Corp.*, No. 3:22-CV-591-G, 2023 WL 2799726, at *6 n.2 (N.D. Tex. Apr. 4, 2023).

Plaintiffs have not, nor can they, plead that they attempted and failed to obtain health insurance plans or policy documents.   Because unlike *Innova*, here the patients/insureds

themselves are joined as Plaintiffs, and by definition have access to their health care plans. Therefore, Plaintiffs do not meet the *Innova* exception.

Furthermore, the Complaint fails to plead what contract was actually breached. Rather, Plaintiffs baldly allege that "failing to reimburse at all or per the terms of the applicable plans and policies constitutes a breach of the express terms of the policy of plan documents." Compl. ¶ 90. However, the Complaint is devoid of any allegations identifying any applicable plan and/or plan documents, or the terms of the alleged applicable plans that were breached. For all the reasons stated above, Plaintiffs' Complaint fails to meet the standard to plead improper reimbursement based on representative plan terms and therefore, Plaintiffs' ERISA and breach of contract claims (Counts I and II) should be dismissed.[19]

### 2. *Plaintiffs fail to state a claim for common law torts (Counts III and IV).*

#### a. *Plaintiffs fail to state a claim for bad faith (Count III).*

Plaintiffs have failed to allege the necessary independent injury required for a bad faith claim. "[I]f an insurer's statutory violation causes an injury independent of the loss of policy benefits, the insured may recover damages for that injury even if the policy does not grant the insured a right to benefits," but "only if the damages are truly independent of the insured's right to receive policy benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 499–500 (Tex. 2018); *Moore v. Allstate Tex. Lloyd's*, 742 F. App'x 815, 819 (5th Cir. 2018) (applying *Menchaca*'s "general rule" to common law breach of the duty of good faith and fair dealing claim and affirming grant of motion to dismiss); *see also Turner v. Peerless Indemn. Ins. Co.*, No. 07-17-00279-CV, 2018 WL 2709489, at *4–5 (Tex. App.—Amarillo June 5, 2018, no pet.) (finding

---

[19] In other contexts Plaintiffs might be justified in seeking leave to replead. But here, this would be Plaintiffs' fourth bite at the apple and they have repeatedly disregarded the warnings afforded by the Court's Standing Order.

that plaintiff could not recover "the amount of benefits the insured loses out on as a result" of extra-contractual claims because that alleged injury was not "independent of what he claims he lost 'out on' under the policy"). Here, Plaintiffs have asserted only that "BCBSTX breached its duty by failing to provide full payment on the insurance claims"—the same injury alleged in Plaintiffs' breach of contract count. *Compare* Compl. ¶ 95 *with id.* ¶ 90. Because Plaintiffs alleged no independent injury, their bad faith claim fails.

### b.   Plaintiffs fail to state a claim for negligent misrepresentation (Count IV).

Plaintiffs also purports to bring a claim against BCBSTX for unspecified negligent misrepresentations. Compl. ¶¶ 97–102. Importantly, because Lonestar brings this claim only as an assignee or authorized representative, the Court must determine that the Complaint sufficiently alleges that *Patient Plaintiffs* either had viable negligent misrepresentation claims against BCBSTX before the alleged assignments or that *Patient Plaintiffs* currently have viable negligent misrepresentation claims. The Complaint fails to allege sufficient facts for either determination.

First, the core elements of a negligent misrepresentation claim are a financial loss due to a plaintiff's "justifiable reliance" on a misrepresentation. *See Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 604 (N.D. Tex. 2014) (listing the elements of a negligent misrepresentation claim, which includes that "the plaintiff suffered pecuniary loss by justifiably relying on the representation"). The Complaint wholly fails to plead these core elements as to the Patient Plaintiffs (who are the relevant parties for this cause of action). The Complaint alleges that all alleged misrepresentations were made to Lonestar (Compl. ¶¶ 98– 99), and contains no allegations of reliance by any patient, let alone justifiable reliance. Rather, the Complaint alleges only that *Lonestar* relied on alleged misrepresentations by BCBSTX. *See* Compl. ¶ 101 ("Lone Star (as assignees of the insureds' claims and Lone Star as the authorized

representative) relied on BCBSTX's misrepresentations in attempting to determine coverage information for the Patients and expected appropriate reimbursement for the emergency services provided."). Pleading Lonestar's reliance is insufficient for the negligent misrepresentation claim, which was brought on behalf of the Patient Plaintiffs.

Further, the Complaint fails to allege any damages from the alleged misrepresentations that would arise independent of contractual obligations owed to the Patient Plaintiffs. Under the economic loss rule, a party may not recover benefit-of-the-bargain damages for negligent misrepresentation while such damages are based on an alleged breach of contract. *See Uzodinma v. JPMorgan Chase Bank, N.A.*, No. 3:13-CV-5010-L, 2014 WL 4055367 at *7 (N.D. Tex. Aug. 14, 2014) (dismissing misrepresentation claim because the plaintiffs' allegations "would give rise to liability based on the contract . . . and would not give rise to liability independent of the fact that a contract exists between Plaintiff and Defendant"); *see also BCC Merch. Sols., Inc. v. Jet Pay, LLC*, 129 F. Supp. 3d 440, 469 (N.D. Tex. 2015) (holding negligent misrepresentation claims fail under the economic loss rule because there was no injury independent of breach of contract).

Plaintiffs allege BCBSTX misrepresented in post-claim communications the ***contractual*** bases for its denials of claims and that "[b]ased on the misrepresentations," Plaintiffs were unable to obtain the reimbursements they were due. Compl. ¶ 101. But Plaintiffs' entitlement derives exclusively from the Patient Plaintiffs' contract rights, including allowing Lonestar, as assignee, to stand in their shoes in receiving insurance proceeds. Accordingly, Plaintiffs' alleged misrepresentation damages are, in fact, the Patient Plaintiffs' alleged contract damages. Therefore, the economic loss rule forecloses any negligent misrepresentation claim that the Patient Plaintiffs may have had, whether assigned to Lonestar or not. *Davis v. JPMorgan Chase Bank*, N.A., No. 6:12-CV-312-MHS, 2014 WL 587055, at *4 (E.D. Tex. Feb. 12, 2014) (dismissing negligent

misrepresentation claims "relate[d] directly to the parties' obligations under the contract . . . [because] as a matter of law, they cannot form the basis of Plaintiff's negligent misrepresentation claim"). Thus, the Court should dismiss Count IV as to both the Patient Plaintiffs and Lonestar.

> c.   *Plaintiffs' common law torts claims are preempted by ERISA.*

To the extent that Plaintiffs' tort causes action include claims under ERISA-governed plans they must be dismissed because they are preempted by ERISA. 29 U.S.C. § 1144(a) ("Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title."). In the Fifth Circuit, when "a health-care provider's [tort] claim depends on and derives from the rights of the plan participants and beneficiaries to recover benefits under an ERISA plan's terms, the claim is preempted." *Grand Parkway Surgery Ctr., LLC v. Health Care Serv. Corp*., No. CV H-16-549, 2017 WL 1231026, at *2 (S.D. Tex. Apr. 4, 2017). This occurs, when, for example, "plan participants or beneficiaries [] allege improper processing of a claim for plan benefits." *St. Luke's Episcopal Hosp. Corp. v. Stevens Transport, Inc*., 172 F. Supp. 2d 837, 841 (S.D. Tex. 2001); *cf., e.g*., *Access Mediquip L.L.C. v. UnitedHealthcare Ins. Co*., 662 F.3d 376, 385 (5th Cir. 2011), *adhered on reh'g en banc*, 698 F.3d 229 (5th Cir. 2012) (concluding negligent misrepresentation claim was not preempted where alleged misrepresentations were made outside of the plan and consisted of pre-authorization statements from insurer to provider about extent or rate of coverage).

Plaintiffs' negligent misrepresentation and bad faith claims are premised on Plaintiffs' rights to recover benefits under the plan, not on any independent alleged misrepresentations outside the plan. Indeed, both claims can be reduced to Plaintiffs' allegations that the patients' plans require BCBSTX to reimburse at a particular rate, and BCBSTX did not reimburse at that

rate. *See, e.g.*, Compl. ¶ 95 ("BCBSTX owed a duty of good faith and fair dealing to its insureds under the insurance policies. . . . BCBSTX breached its duty by failing to provide full payment on the insurance claims . . . ."); *id*. ¶ 98 ("Throughout the ***claims process***, BCBSTX—either as an insurer or third-party administrator[—]provided numerous representations to Lone Star as an assignee of the insureds' claims and as the authorized legal representatives of the Patients.") (emphasis added).  Therefore, to determine whether BCBSTX could be liable on either Plaintiffs' bad faith or negligent misrepresentation claims, the Court would need to examine the terms of each plan at issue; thus, Plaintiffs' tort claims are preempted by ERISA.   *See Brushy Creek Family Hosp.,* 2022 WL 6727278, at *5 (concluding that "claims challenging the rate of reimbursement are 'inextricably linked' to the reimbursement obligation set forth in the ERISA plan's terms" and were thus preempted); *Experience Infusion Ctrs.,* 2022 WL 1289342, at *2 (concluding negligent misrepresentation claim was preempted by ERISA because "[f]ailing to pay or misrepresent benefits under an ERISA plan relates to the plan. Infusion says that the plan requires BlueCross to pay the usual and customary rate. It's [sic] claims rest on the ERISA plans").

### 3.      *Plaintiffs fail to state a claim for declaratory judgment (Count V).*

Plaintiffs fail to state a claim for a declaratory judgment because there are no private rights of action for the Texas Insurance Code or Affordable Care Act regulation that Plaintiffs rely on as the bases of their claim.  Indeed, a declaratory judgment under the Emergency Care Provisions of the Texas Insurance Code is improper because Plaintiffs have no private right of action under them in the first place. *See* Tex. Ins. Code §§ 1271.155; 1301.0053; *see also Tex. Med. Res., LLP*, 2023 WL 176287, at *8 (holding "the [Texas] Insurance Code does not create a private cause of action for claims under the Emergency Care Statutes").  And as the court made clear in *Hospital Internists of Austin v. Quantum Plus*, when the underlying statute "does not provide for a cause of action for such violations," parties cannot use the declaratory judgment act to create a cause of action because

that "would present an end-run around the statutory enforcement mechanism provided in the [statute]." No. 1:18-CV-466-RP, 2019 WL 1922051, at *5 (W.D. Tex. Jan. 23, 2019). "[A] plaintiff cannot use the DJA to create a private right of action where none exists." *Id.* Similarly, the Affordable Care Act did not create a private right of action to enforce its regulations. *See Apollo MedFlight, LLC v. BlueCross BlueShield of Tex.*, No. 2:18-CV-0166-D-BR, 2019 WL 2539272, at *8 (N.D. Tex. Apr. 12, 2019) (finding the Affordable Care Act does not create an express or implied private right of action).

Additionally, to the extent that Plaintiffs' request for declaratory relief is predicated on the alleged right to seek benefits in the future under unidentified contracts for which future patients might assign or authorize their rights to Lonestar, such a claim also fails. As Texas courts recently observed: "The adjudication of hypothetical future claims, with unknown patients and unknown medical procedures, does not present a real controversy. The controversy is not ripe for consideration." *See Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 620 S.W.3d 458, 471 (Tex. App.—Dallas 2021), *aff'd*, 659 S.W.3d 424 (Tex. 2023). Likewise, such allegations are inherently speculative and not sufficiently imminent to convey standing to Plaintiffs to seek a declaration in advance of any services being rendered, rights assigned, or potentially insurance policies even being sold. *Lujan*, 504 U.S. at 560 (explaining that to have standing, a plaintiff's claim must be "actual or imminent, not conjectural or hypothetical"). Therefore, Plaintiffs' declaratory judgment claim should be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, BCBSTX respectfully requests that this Court dismiss Plaintiffs' Complaint. BCBSTX further respectfully requests any other relief to which it is justly entitled.

Dated:  May 22, 2023

Respectfully Submitted,

BY: */s/ Paige Holden Montgomery*
Paige Holden Montgomery
Texas Bar No. 24037131
pmontgomery@sidley.com
Natali Wyson
Texas Bar No. 24088689
nwyson@sidley.com
Claire Homsher
Texas Bar No. 24105899
chomsher@sidley.com
Mehzabin Lora Chowdhury
Texas Bar No. 24105600
lchowdhury@sidley.com
**SIDLEY AUSTIN LLP**
2021 McKinney Avenue, Suite 2000
Dallas, Texas 75201
(214) 981-3300
(214) 981-3400 (facsimile)

Brian P. Kavanaugh
Texas Bar No. 24115132
bkavanaugh@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, Illinois 60603
(312) 853-7000
(312) 853-7036 (facsimile)

**COUNSEL FOR DEFENDANT BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION, A MUTUAL LEGAL RESERVE COMPANY**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on all counsel of record in accordance with the Federal Rules of Civil Procedure and this Court's CM/ECF filing system on May 22, 2023.

*/s/ Paige Holden Montgomery*
Paige Holden Montgomery

## <u>CERTIFICATE OF CONFERENCE</u>

The undersigned hereby certifies that BCBSTX complied with this Court's Standing Order and informed counsel-of-record for the Plaintiffs of the deficiencies in the then-live complaint ("First Amended Complaint") and the bases of its anticipated motion to dismiss. BCBSTX sent a letter outlining these deficiencies on November 9, 2022, and counsel for the Parties conferred concerning that letter on November 16, 2022. The Second Amended Complaint was filed on January 6, 2023 but did not remedy the deficiencies identified by BCBSTX so BCBSTX filed its Motion to Dismiss.  After discussions between counsel for the Parties, counsel for Plaintiffs indicated his intent to file a Third Amended Complaint that would add the individual patients as plaintiffs.  BCBSTX indicated its opposition and the Parties submitted briefing and participated in oral argument on Plaintiffs' Motion for Leave to File a Third Amended Complaint.  On March 10, 2023, this Court dismissed Defendant's original Motion to Dismiss without prejudice noting that a revised Motion to Dismiss could be re-filed if the Motion for Leave to Amend was granted, which it was on April 18, 2023.  The bases for this Motion to Dismiss have been the subject of extensive conferrals between the Parties and Plaintiffs' Third Amended Complaint is still deficient.

*/s/ Paige Holden Montgomery*
Paige Holden Montgomery
