UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

**LONE STAR 24 HR ER FACILITY, LLC,**

   *Plaintiff*,

**v.**

**BLUE CROSS AND BLUE SHIELD OF TEXAS, A DIVISION OF HEALTH CARE SERVICE CORPORATION; AND PREMERA BLUE CROSS,**

   *Defendants*.

Case No. SA-22-CV-01090-JKP

### MEMORANDUM OPINION AND ORDER

    Before the Court is Defendants' Omnibus Motion to Dismiss Counts IV and V of Plaintiff Lone Star 24HR ER Management, LLC's (Lone Star) Fourth Amended Complaint. *ECF Nos. 158,181*. Lone Star responded. *ECF No. 170*. Upon consideration, Defendants' Motion to Dismiss is **GRANTED**. The negligent misrepresentation and bad faith insurance practices causes of action are **DISMISSED**. The Requests for Declaratory Judgment are **DISMISSED**.

### Factual Background

    In the Fourth Amended Complaint, Lone Star asserts it is a privately-held company that operates a freestanding emergency care facility (FEC). Lone Star alleges the Texas Freestanding Emergency Care Facility Licensing Act (the Act) authorized the operation of FECs in Texas in 2009. Lone Star alleges the Act requires FECs to treat any person who enters its facility seeking emergency care, regardless of insurance status or coverage.

Pertinent to this case, Lone Star has no contractual relationship with any BCBS entity which would guide the rate of reimbursement for claims Lone Star submits after treatment of a patient with BCBS health insurance. Because these parties have no contractual rate of reimbursement for services Lone Star renders to patients insured by any BCBS entity, it is considered an "out-of-network" provider under any BCBS insurance plan. Consequently, when it treats a patient with insurance through a BCBS entity, Lone Star alleges that upon submission of the claim, BCBS reimburses it in grossly inadequate amounts and sometimes, not at all.

Lone Star alleges the Texas Insurance Code requires insurers to reimburse out-of-network health care providers "at the usual and customary rate or at a rate agreed to by the parties and prohibits the insurer from reimbursing the health care provider "on a discounted fee basis for covered services." Lone Star asserts the regulation in the Texas Administrative Code, 28 Tex. Admin. Code § 3.3708(b), provides that when an out-of-network health care provider imparts emergency services "the insurer must pay the claim, at a minimum, at the usual and customary charge for the service."

Lone Star filed this action alleging the BCBS entities' reimbursement rates and resultant gross underpayments are less than Medicare allowable, less than in-network rates for hospital ERs for the same services, and far less than FAIR Health data that is utilized and was adopted by the Texas Department of Insurance as a benchmark to determine appropriate payment for emergency care providers. For this reason, Lone Star contends BCBS's reimbursement for the claims subject to this lawsuit are not "fair and reasonable" or "usual and customary" reimbursement for the care provided to BCBS's insureds. Through this litigation and the asserted causes of action, Lone Star seeks to establish the meaning of "usual and customary rate" under the relevant cited statutes.

Based upon these allegations, Lone Star asserts a cause of action for violation of the Employee Retirement Income Security Act (ERISA) § 502(a)(3) claim for recovery of benefits. Lone Star also asserts state law causes of action for breach of contract, bad faith insurance practices and negligent misrepresentation. Lone Star also seeks declaratory relief. The Court notes that the dates of Lone Star's service on the BCBS insureds' claims for insurance coverage range from January 2019 to August 2021. *See ECF No. 89, Fourth Amended Complaint, Exhs. A,B*. These are the only insurance claims pertinent to this lawsuit.

Defendants now file this Omnibus Motion to Dismiss the negligent-misrepresentation cause of action (Count IV) and the requests for declaratory judgment (Count V) for failure to state a claim pursuant to Federal Rule 12(b)(6). In response, Lone Star "agrees to voluntarily dismiss its cause of action for negligent misrepresentation." Based upon this concession, the Court will GRANT Defendants' Motion to Dismiss the negligent misrepresentation cause of action.

In the Motion to Dismiss, Defendants indicate Lone Star's counsel represented to their counsel that Lone Star will voluntarily dismiss its cause of action of bad faith insurance practice, or breach of good faith and fair dealing, listed in Count III, and based upon this representation, Defendants did not move to dismiss Count III. *ECF No. 158, p. 5, fn. 6*. Lone Star does not contest this representation nor make any assertion with regard to this cause of action. By its lack of response, the Court concludes Lone Star concedes to this statement of its intent to dismiss the "bad faith" cause of action in Count III. Consequently, the Court DISMISSES the cause of action of bad faith insurance practices.

This leaves for the Court's determination of Defendants' Motion to Dismiss Lone Star's Requests for Declaratory Judgment.

## Legal Standard

To provide opposing parties fair notice of the asserted cause of action and the grounds upon which it rests, every pleading must contain a short and plain statement of the cause of action which shows the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To satisfy this requirement, the Complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555-558, 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The focus is not on whether the plaintiff will ultimately prevail, but whether that party should be permitted to present evidence to support adequately asserted causes of action. *Id.*; *Twombly*, 550 U.S. at 563 n.8. Thus, to warrant dismissal under Federal Rule 12(b)(6), a Complaint must, on its face, show a bar to relief or demonstrate "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Fed. R. Civ. P. 12(b)(6); *Clark v. Amoco Prod. Co.,* 794 F.2d 967, 970 (5th Cir. 1986). Dismissal "can be based either on a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Frith v. Guardian Life Ins. Co.,* 9 F. Supp.2d 734, 737–38 (S.D.Tex. 1998). "Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the allegations in the complaint." *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999); *Vander Zee v. Reno,* 73 F.3d 1365, 1368 (5th Cir. 1996).

In assessing a Motion to Dismiss under Federal Rule 12(b)(6), the Court's review is limited to the Complaint and any documents attached to the Motion to Dismiss, which are also referred to in the Complaint and central to the plaintiff's claims. *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014). When reviewing the Complaint, the "court accepts all well-pleaded facts as true, viewing them in the light most favora-

ble to the plaintiff." *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)(quoting *Jones v. Greninger*, 188 F.3d at 324).

A Complaint should only be dismissed under Federal Rule 12(b)(6) after affording every opportunity for the plaintiff to state a claim upon which relief can be granted, unless it is clear amendment would be futile. *Foman v. Davis,* 371 U.S. 178, 182 (1962); *Hitt v. City of Pasadena,* 561 F.2d 606, 608–09 (5th Cir. 1977); *DeLoach v. Woodley,* 405 F.2d 496, 496-97 (5th Cir. 1968). Consequently, when it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint. *Hitt,* 561 F.2d at 608–09. A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds that the plaintiff alleged his best case or amendment would be futile. *Foman,* 371 U.S. at 182; *DeLoach*, 405 F.2d at 496–97.

## Discussion

**Declaratory Judgment Requests**

The Declaratory Judgment Act confers on federal courts discretion to "declare the rights and other legal relations of any interested party" in any "case of actual controversy within its jurisdiction." 28 U.S.C. § 2201(a); *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). "The Declaratory Judgment Act does not create an independent cause of action; it only provides a form of relief." *Carson v. Fed. Nat'l Mortgage Ass'n*, 5:11-CA-925, 2012 WL 13029757, at *2 (W.D. Tex. Jan. 26, 2012); 28 U.S.C. § 2201(a). Consequently, courts may decline "to exercise their discretion to decide declaratory judgment actions where deciding that action would be redundant in light of the affirmative causes of action before the Court." *Amerisure Ins. Co. v. Thermacor Process, Inc.*, 4:20-cv-01089, 2021 WL 1056435, at *7 (N.D. Tex. Mar. 19, 2021) (collecting cases). "When the request for a declaratory judgment adds nothing to an existing suit and is merely duplicative of the substantive claims already at issue, the request for a declaratory judgment need not be entertained." *Carson*, 2012 WL 13029757, at *2 (citing *Madry v. Fina Oil & Chemical Co.*, 44 F.3d 1004, 1994 WL 733494, at *2 (5th Cir. 1994); *Aetna Inc. v. People's*

*Choice Hosp., LLC*, No. SA-18-CV-00323 2019 WL 12536914, at *8 (W.D. Tex. Sept. 30, 2019). Similarly, when the key issues to be decided in a case . . . are also presented as affirmative causes of action, declaratory relief is inappropriate. *Wheeler v. Safeco Ins. Co. of Indiana*, No. SA-21-CV-00343, 2022 WL 1295288, at *2 (W.D. Tex. Apr. 29, 2022).

In its "broad discretion to grant or decline to grant declaratory judgment," a court may consider a variety of factors. *Wilton,* 515 U.S. at 277; *Torch, Inc. v. LeBlanc,* 947 F.2d 193, 194 (5th Cir.c1991); *Rowan Cos. v. Griffin,* 876 F.2d 26, 29 (5th Cir. 1989). The two principal factors are whether the requested declaratory judgment: (1) "will serve a useful purpose in clarifying and settling the legal relations in issue," and (2) "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Concise Oil & Gas P'ship v. La. Intrastate Gas Corp.,* 986 F.2d 1463, 1471 (5th Cir. 1993). When requests for declaratory relief seek resolution of issues that will be resolved as part of the causes of action asserted, dismissal is appropriate. *Env't Tex. Citizen Lobby, Inc. v. ExxonMobil Corp.*, 824 F.3d 507, 523 (5th Cir. 2016); *Am. Equip. Co., Inc. v. Turner Bros. Crane & Rigging, LLC*, No. 4:13-CV-2011, 2014 WL 3543720, at *3–4 (S.D. Tex. July 14, 2014)(citing cases); *Compare, 5436, LLC v. CBS Corp.,* No. H–08–3097, 2009 WL 3378379, at *17 (S.D.Tex. Oct.16, 2009) (denying motion to dismiss counterclaim for declaratory judgment where the declaratory relief sought "seeks to define the ongoing and future duties of the parties under the governing contract").

Defendants assert separate arguments with regard to these Requests for Declaratory Judgment, grouping requests (i) and (ii) together, and grouping requests (iii) and (iv) together. For ease of reference, the Court will Defendants' arguments as grouped.

**Requests for Declaratory Judgment (i) and (ii):**

In Count V of its Fourth Amended Complaint, Lone Star requests a declaratory judgment

finding and determining that:
i. The Texas Insurance Code and Texas Administrative Code require Defendants, either singularly, jointly or severally, to reimburse Lone Star at a usual, customary and reasonable rate;
ii. Defendants must base the usual, customary and reasonable rate at which it reimburses Lone Star based on 'generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in costs';

*ECF No. No. 44, pars. 110-111.*

Defendants contend they are entitled to dismissal of these requests under Federal Rule 12(b)(6) based upon one argument: the basis for relief is fatally flawed because Lone Star quotes a former and invalidated version of Texas Administrative Code § 3.3708(b) and (c)(1) as support for its asserted entitlement to relief. Because a Texas court held the cited and quoted Administrative Code regulation held no statutory basis in the Insurance Code, and was, therefore invalid, and because the quoted previous version is no longer a part of the Administrative Code, Defendants contend this Court may not grant the requested relief as stated. *ECF No. 158, pp. 28-30.*

Lone Star does not directly respond to this particular argument. Instead, Lone Star presents general arguments for denial of Defendants' Motion to Dismiss these requests, stating generally, its "request for declaratory relief does not ask the Court to interpret these statutory or regulatory provisions in a vacuum. [Lone Star] do[es] not bring claims "under" these provisions. . . . Rather, Plaintiffs have requested the Court interpret various legal provisions because they expressly govern the rate of reimbursement owed. . . ."[1] *ECF No. 170, p. 20, generally, pp. 15-21.*

Analysis of Defendants' argument for dismissal requires examination of the factual bases for these Requests for Declaratory Judgment asserted in Lone Star's Fourth Amended Com-

---

[1] Lone Star also argues this Motion to Dismiss based upon this argument should be denied because this Court already ruled on this issue, or it was available for Defendants to argue, upon their previous Motion to Dismiss. This argument is without merit and will not be addressed because the previous Motion to Dismiss and this Court's Memorandum and Recommendation was based upon the Third Amended Complaint and differently-worded Requests for Declaratory Judgment. *See ECF Nos. 56.*

7

plaint, as well as examination of the history of the pertinent statues under the Texas Insurance Code (TIC) §§ 1301, 1271 and the Texas Administrative Code (TAC) § 3.3708.

**Factual Bases Stated in Fourth Amended Complaint**

In support of its causes of action, and specifically, in support of these specific Requests for Declaratory Judgment, Lone Star asserts,

> Texas law also specifies and addresses the amount that insurers must pay out-of-network providers that provide emergency care services. *The Texas Administrative Code provides that, when emergency services are rendered to an insured by a nonpreferred or out of network provider, "the insurer must pay the claim, at a minimum, at the usual and customary charge for the service." 28 TEX. ADMIN. CODE § 3.3708(b)*. The Texas Insurance Code requires insurers to reimburse out-of-network providers "at the usual and customary rate or at a rate agreed to by the issuer and the nonpreferred provider for the provision of the services." TEX. INS. CODE § 1301.0053. . . . The Texas Insurance Code also prohibits an insurer or administrator like BCBSTX from reimbursing a provider "on a discounted fee basis for covered services" that are provided, unless contracted to do so. TEX. INS. CODE § 1301.056(a). As already described above, emergency services—unlike most other healthcare services—are always "covered services" by Texas and federal law. *Importantly, under Texas law, the "usual and customary rate" refers to the amount the provider charges for its services, not what BCBSTX or another health insurer may have contracted to pay to in-network providers*.

*ECF No. 89, pp. 27-28* (emphasis added for this analysis only).

> *Texas law requires that insurers and/or administrators calculate the "usual and customary rate" based on "generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in cost." 28 TEX. ADMIN. CODE § 3.3708(c)(1)*. Yet, insurers and/or their administrators such as BCBSTX and Blue Card plans create their own internally derived methodologies for adjudicating claims.

*ECF No. 89*, p. 33 (emphasis added).

> Since in such circumstances, the health plan is discouraging its members from receiving their care at the non-contracted facility, *the non-contracted facility has no obligation to reduce its charges and is entitled to receive payment based on their usual and customary charges for the services rendered*, even though in the case of an FEC, the patient presents or is brought by ambulance and the FEC is required by law to treat the patient.

*ECF No. 89, p. 47* (emphasis added).

> Section 1301 of the Texas Insurance Code pertains to Preferred Providers and out-of-network providers . . . Similarly, Section 1271.155 of the Texas Insurance Code applies to HMOs. Under both chapters, BCBSTX is required to reimburse FECs at the usual and customary rate. . . . For emergency claims falling under the requirements of the Texas Insurance Code, *the reimbursement amounts for emergency care must be read in conjunction with the Texas Administrative Code. See TEX. ADMIN. CODE § 3.3701*.

*ECF No. 89, p. 67*.

Accordingly, based upon these excerpts from the Fourth Amended Complaint, Lone Star asserts that under 28 Texas Administrative Code § 3.3708(b), the BCBS entities were required to pay Lone Star's claims for service to BCBS patients at Lone Star's usual and customary charge for the particular services rendered.[2] *See ECF 89, pp. 27-28,67*. This assertion corresponds to Request for Declaratory Relief (i). Lone Star further asserts 28 Texas Administrative Code § 3.3708(c)(1) requires that the BCBS entities calculate the "usual and customary rate" based on "generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in cost," and it has no obligation to reduce its charges and is entitled to receive payment based on their usual and customary charges for the services rendered. *See ECF 89, pp. 33,47,67*. These assertions correspond to Request for Declaratory Relief (ii).

At the time the insurance claims that are the subject of this action originated, Texas Insurance Code § 1301.155(b) stated: "If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the following emergency care services *at the preferred level of benefits* until the insured can reasonably be expected to transfer to a preferred provider:..." Tex. Ins. Code § 1301.155(b)(March 1, 2010 – Aug. 31, 2019)(emphasis added for comparison). Effective September 1, 2019, this statute required: "If an insured cannot reasonably reach a preferred provider, an insurer shall provide reimbursement for the following emergency

---

[2] The Court must presume Lone Star refers to the versions of the Texas Administrative Code § 3.3708 and Texas Insurance Code § 1301 as they existed at the origination of the insurance claims that are the subject of this action, which were from January 2019 to August 2021.

care services *at the usual and customary rate or at an agreed rate and* at the preferred level of benefits until the insured can reasonably be expected to transfer to a preferred provider:…." Tex. Ins. Code § 1301.155(b) (September 1, 2019 to present)(emphasis added for comparison). Similarly, with regard to HMOs, the Texas Insurance Code required: "(a) A health maintenance organization shall pay for emergency care performed by non-network physicians or providers *at the usual and customary rate* or at an agreed rate." Tex. Ins. Code § 1271.155(a) (effective March 1, 2010 to present)(amended September 1, 2019, with no change to this section).

No Texas statutory provision provided guidance for determination of the reimbursement rate that insurers must pay on these emergency care claims under Tex. Ins. Code §§ 1301 and 1271. Consequently, the Texas Department of Insurance ("TDI") created a regulation establishing a minimum reimbursement level for out-of-network emergency care, that is, Section 3.3708 of the Texas Administrative Code. Thus, Texas Administrative Code § 3.3708 operates as an interpretive guide to Texas Insurance Code §§ 1301 and 1271. At the time the insurance claims that are the subject of this action originated, Texas Administrative Code § 3.3708(b) stated: "(b) When services are rendered to an insured by a nonpreferred provider because no preferred provider is reasonably available to the insured under subsection (a) of this section, the insurer must: (1) pay the claim, at a minimum, at the usual and customary charge for the service, less any patient coinsurance, copayment, or deductible responsibility under the plan; …." Tex. Admin Code § 3.3708(b)(November 3, 2026 to April 24, 2024). Subsection (c), then, explained that in calculating a "usual or customary charge" the insurer must use "generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in costs." *Id*. at § 3.3708(c)(November 3, 2026 to April 24, 2024).

On October 15, 2020, a Texas state District Court invalidated Texas Administrative Code § 3.3708(b)(1) and (b)(3), finding no statutory authority for this regulation. *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, Cause No. D-1-GN-18-003846, 2020 WL 8175836, at *1 (419th Judicial Dist., Travis Cnty., Oct. 15, 2020) ("TAHP Order"). The result of invalidating subsections (b)(1) and (b)(3) was that the dependent methodology defined in subsection (c)(1) was no longer mandatory. Thus, the Texas state District Court's ruling rendered Texas Administrative Code §§ 3.3708(b)(1), (b)(3), and (c)(1) invalid from inception, leaving a gap and ambiguity in calculation and determination of an insurer's obligation for payment of claims for emergency health care services rendered by a "nonpreferred provider" to an insured patient. *See id.*

Recognizing this ambiguity and in implied agreement with the Texas state District Court's ruling in *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, the Texas Department of Insurance subsequently amended Administrative Code § 3.3708 on April 24, 2024. While the amendment does not pertain to the insurance claims that are the subject of this action, the TDI's explanation for the amendment is informative. In its Adoption Order, the TDI explained: "The amendments remove payment rules that were invalidated by court order in *Tex. Ass'n of Health Plans v. Tex. Dep't of Ins.*, Cause No. D-1-GN-18-003846 (Oct. 15, 2020) ("TAHP Order")", and "Amendments also replace previous subsections (a) and (b), which contained provisions invalidated by the TAHP Order, with new subsections (a) and (b). *TDI Adoption Order at 2, 15* (Available at https://www.tdi.texas.gov/rules/2023/documents/20248601.pdf). In response to comments on the amendment, the TDI stated: "Because the TAHP lawsuit challenged rules providing for the calculation of usual and customary rates based on provider billed charges, deletion of the paragraph providing for calculations based on billed charges is consistent with the court order." *TDI Adoption Order at 68*. In making this clarification, TDI, thus, confirmed the

11

term "usual and customary rate" is not determined by a provider's customary billed charge for a service. To provide consistency, with the TAHP Order, the TDI replaced Texas Administrative Code § 3.3708 with new requirements for payment of out-of-network emergency care claims, eliminating all references to the use of providers' billed charges to determine the applicable "usual and customary" reimbursement rate. *See id*. at 2,15,68; Tx. Admin. Code § 3.3708 (effective 4/24/24).

Review of this legislative history directs determination of the veracity of Requests for Declaratory Judgment (i) and (ii). First, with regard to request (i), Lone Star requests this Court make a specific declaration as to what these specific statutes state, specifically, that these Texas Insurance Code provisions and the Texas Administrative Code regulation require Defendants to reimburse Lone Star at a usual, customary and reasonable rate. *See ECF No. 89, Prayer for Relief, p. 70.* The statutes and regulation state what they state. It is improper and unnecessary for this Court to make a declaration regarding what a statute or regulation states or requires. Any declaration by the Court would not serve a useful purpose in settling a legal issue or uncertainty. *See Concise Oil & Gas P'ship,* 986 at 1471. For this reason, this Court will exercise its discretion to decline consideration of this request and grant the Motion to Dismiss. *See Wilton,* 515 U.S. at 277; *Torch, Inc. v. LeBlanc,* 947 F.2d at 194. In any event, Request (i) may also be subsumed in the Court's analysis and conclusion of the argument for dismissal of Request (ii).

Review of the legislative history reveals Texas Administrative Code § 3.3708 is a regulation that guides interpretation of Texas Insurance Code §§ 1301 and 1271. However, Lone Star's Requests for Declaratory Judgment (i) and (ii) would require this Court quote the previous version of Texas Administrative Code § 3.3708(b) and (c)(1) that were ruled invalid by a Texas state District Court and consequently amended by the TDI. That is, Lone Star requests this Court

declare BCBS entities must pay Lone Star "at a usual, customary and reasonable rate" for the services provided to its insured, and this reimbursement rate must be based on "'generally accepted industry standards and practices for determining the customary billed charge for a service and that fairly and accurately reflects market rates, including geographic differences in costs.'" *ECF No. 89, Fourth Amended Complaint at Prayer for Relief, p. 70*. Although this language and version did exist at the time Lone Star treated the patients and submitted the insurance claims, because this quoted language derived from the Administrative Code was found to be invalid from inception, as imposing an obligation that had no basis in statute, any declaratory relief quoting this invalid obligation or standard is inappropriate and would provide remedy based on purported violation of a regulation that no longer exists. Accordingly, Lone Star's Requests for Declaratory Judgment (i) and (ii) must be dismissed.

**Requests for Declaratory Judgment (iii) and (iv):**

> In its Fourth Amended Complaint, Lone Star requests a declaratory judgment finding and determining that:
>
> iii.    Defendants failed to pay Lone Star at usual, customary and reasonable rates; and
> iv.    Lone Star is entitled to recover damages from Defendants, either singularly, jointly or severally in an amount to be determined at a trial on the merits, and all other appropriate relief.

*ECF No. No. 44, pars. 110-111*

Defendants contend they are entitled to dismissal under Federal Rule 12(b)(6) of requests (iii) and (iv) because Lone Star asks the Court to construe what their obligation for payments were in the past four or more years. Because these requests pertain to past conduct, Defendants contend the requests are not an appropriate subject for declaratory relief. Further, Defendants contend they are entitled to dismiss of Lone Star's requests for declaratory judgment (iii) and (iv) because the substance of these requests are duplicative of the breach of contract and ERISA

causes of action, and the issue whether it failed to pay Lone Star at usual, customary and reasonable rates, and if so, what any damages would be, will be resolved through resolution of those causes of action. Consequently, a separate declaratory judgment would be redundant, and thus, inappropriate.

In its allegations supporting its cause of action for violation of ERISA under Count I, Lone Star alleges Defendants failed to reimburse Lone Star according to the express provisions of the ERISA health plans applicable to the patients it treated. Lone Star alleges "it is entitled to recovery of the difference between the payment it received and the amount due per the express terms of the affected ERISA plans." *ECF No. 89, Fourth Amended Complaint, par. 123*. Similarly, in its allegations supporting its cause of action for breach of contract in Count II, Lone Star alleges that "BCBSTX and/or the Blue Card plan failed to pay in accordance with the terms of the insurance policies and plans. . . . As a result of the breach of the express terms of plans and policies, Lone Star has been damaged in the amount of the balance of its usual and customary charges." *Id. at par. 133*. Thus, to resolve Lone Star's ERISA and breach of contract causes of action, the fact finder must determine whether the BCBS entities failed to pay Lone Star at usual, customary and reasonable rates, and if so, whether Lone Star is entitled to recover damages from these entities. These findings of fact are duplicative of Lone Star's requests for declaratory relief (iii) and (iv). Similarly, because the key issues to be decided in this case are also presented as affirmative causes of action for violation of ERISA and breach of contract, these requests for declaratory relief are inappropriate. *See Wheeler*, 2022 WL 1295288, at *2.

For these reasons, the Court concludes Lone Star's requests for declaratory relief (iii) and (iv), are duplicative of the breach of contract and ERISA causes of action, seek resolution of issues that must be resolved in disposition of these causes of action, and seek redundant remedy. Therefore, these requests are not appropriate claims for declaratory relief. Because these requests for declaratory relief are duplicative and inappropriate for declaratory relief, the Court will exercise its discretion to decline consideration. *See Wilton,* 515 U.S. at 277; *Torch, Inc. v. LeBlanc,*

947 F.2d at 194. Because these requests for declaratory relief seek resolution of issues that will be resolved as part of the remaining causes of action, dismissal is appropriate.

Based upon this conclusion, the Court will not address Defendants' additional argument that these requests for declaratory judgment may be dismissed because they seek relief based upon past conduct.

## Conclusion

The Court **GRANTS** Defendants' Omnibus Motion to Dismiss. *ECF No. 158*. Lone Star's asserted causes of action of negligent misrepresentation and bad faith insurance practices are DISMISSED WITH PREJUDICE. All Requests for Declaratory Judgment are DISMISSED WITH PREJUDICE.

It is so ORDERED.
SIGNED this 3rd day of June, 2025.

_____
JASON PULLIAM
UNITED STATES DISTRICT JUDGE